PENNINGTON *v.* PEOPLE'S BANK OF SUMNER *et al.*

[95 South. 694. En Banc. No. 22823.]

1. EVIDENCE. *Letter of cashier of bank as to priority of lien held admissible as admission of bank against interest.*

Where the cashier of a bank is in control of its affairs and is transacting its business in making a loan and preparing papers taking security for the loan, undertakes to draw the papers of the bank and also the papers of other parties, taking a lien upon the same property, so draws them and causes them to be placed of record so as to show priority of loan in another lienholder, and writes such lienholder that he, such holder, has a prior lien, such letter is an admission of the bank against interest and is admissible in evidence as such.

2. MORTGAGES. *Evidence held insufficient to sustain decree changing priority of deeds of trust.*

Where, in a suit between a bank and another in which the bank as complainant seeks to establish priority for its deed of trust over that of the defendant, which defendant had originally a vendor's lien upon the land, and in drawing the deeds of trust the cashier of the bank draws or causes to be drawn several deeds of trust upon the same property on the same day and causes the deeds to be so recorded as to give the defendant a prior deed of trust, and its cashier writes the defendant, "You now have a first mortgage," and where the mortgage of the defendant is left with such cashier, and such cashier has since died and such deed of trust or mortgage is found in the bank

in a box or drawer for the use of its customers, of which the defendant is one, evidence on the part of the grantors that they understood that the bank's deed of trust was first in priority is insufficient to establish priority, where the defendant testified that he had no knowledge of the arrangement between the bank and the grantors in the deed of trust, and that he was to have a first deed of trust, and would not have taken a secondary lien to secure his rights and given up his first security.

SYKES, *J.*, and SMITH, C. J., dissenting.

APPEAL from chancery court of Tallahatchie county.

HON. G. E. WILLIAMS, Chancellor.

Suit by the People's Bank of Sumner and others against Ben T. Pennington. From a decree for plaintiffs, defendant appeals. Reversed and remanded.

*Wells, Stevens & Jones, E. L. Mounger, Jno. H. Cook,* and *Vivian Cook,* for appellant.

*Hays, Stingily & Whitten* and *Cutrer & Smith,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

On the 26th day of October, 1915, H. R. Jenkins and his wife, Elizabeth Jenkins, conveyed to the appellant, Ben T. Pennington, certain lands in Tallahatchie county involved in this litigation for the consideration of one thousand dollars cash in hand paid, receipt of which was acknowledged, and the further consideration of the assumption of all of the obligations and indebtedness of the said H. R. or Elizabeth Jenkins which is secured by a lien on the property therein conveyed, which indebtedness the appellant, Pennington, agreed and promised to pay as part of the consideration for said deed.

About the year 1918 H. R. and Elizabeth Jenkins filed their bill in the chancery court alleging that the said deed was in fact a mortgage and that they had remained in the possession of the property, and prayed for an accounting of the amount due Pennington and for a redemption of the mortgage. Jenkins and his wife, Elizabeth, employed

attorneys to represent them in said suit, and the cause came to issue, and there was an agreement to settle the litigation by having the title confirmed to Pennington by decree of the said court, which decree was entered by consent and Pennington was to and did convey to J. W. Cutrer and A. H. Stephens, attorneys for H. R. and Elizabeth Jenkins, the property in question at and for the sum of forty-five thousand dollars; of which seventeen thousand five hundred dollars was paid by check of the said attorneys to Pennington and afterwards duly paid; and by the giving of their note to Pennington for twenty-seven thousand five hundred dollars, reserving a vendor's lien in the deed and note to secure the payment of said note. The consent decree and this note and deed were all signed and delivered on the 10th day of November, 1919. On or about the 15th day of November, 1919, a meeting was held and arrangements perfected by which the said attorneys for H. R. and Elizabeth Jenkins were repaid the check for seventeen thousand five hundred dollars, and their note for twenty-seven thousand five hundred dollars surrendered back to them and deed made by them to said H. R. Jenkins to the said property and deed of trust given to Pennington by H. R. and Elizabeth Jenkins on the said lands for the sum of forty-five thousand dollars. There was also an arrangement by which H. R. and Elizabeth Jenkins secured from the People's Bank of Sumner a loan of twenty thousand dollars evidenced by two promissory notes, one for ten thousand dollars due and payable to the People's Bank of Sumner one year after date, and one for ten thousand dollars due and payable to the People's Bank of Sumner two years after date; said notes to the said People's Bank were secured by deed of trust on the lands in controversy, and also by certain other lands belonging to J. W. Jenkins and G. C. Jenkins on their individual lands, said individual lands constituting two hundred fifty-five acres, and said notes to the bank were signed by H. R. Jenkins and his wife, Elizabeth Jenkins, and by J. W. Jenkins and G. C. Jenkins. These instruments were all

dated on the 15th day of November, 1919, and the acknowl-edgments of H. R. Jenkins and his wife, Elizabeth Jen-kins, were taken on the 18th day of November, 1919, and the acknowledgments of J. W. Jenkins and of G. C. Jen-kins were taken on the 19th day of November, 1919; and the deeds of trust filed for record on the 20th day of No-vember, 1919. There was also a deed of trust from H. R. Jenkins and Elizabeth Jenkins to J. W. Jenkins and G. C. Jenkins on the property in controversy to secure them from loss by their indorsements of the notes of H. R. Jenkins and Elizabeth Jenkins to the People's Bank of Sumner.

The meetings and negotiations as above stated were had on the night of the 15th of November, 1919, partly in the office of A. H. Stephens and partly in the People's Bank of Sumner. Mr. Ben T. Rowland, Jr., the cashier of the People's Bank, was present representing the bank, and agreed to have all the papers above mentioned drawn up without expense to the other parties, and all the parties left the papers to be prepared by Rowland; Pennington, the appellant, giving his check for the seventeen thousand five hundred dollars to be paid when the check of Cutrer was paid and when the papers were prepared in accord-ance with the agreement. The note of Cutrer and Steph-ens for twenty-seven thousand five hundred dollars was to be redelivered to them. The deeds of trust were filed for record in the following order: First, the deed of trust to Pennington at 10:30 a. m. on November 20, 1919; the deed of trust to the People's Bank at 11:30 a. m. on the same day; and the deed of trust to J. W. Jenkins and G. C. Jenkins at 12:30 p. m. on the same day.

About one year after these papers were taken and re-corded, Ben T. Rowland, Jr., having then recently died, the president of the People's Bank of Sumner, Mr. T. C. Buford, in checking up the affairs of the bank and check-ing up the records, found that Pennington's deed of trust was recorded prior in time to that of the bank and that the records showed that it matured on January 1, 1921.

He then went to the bank and went into the private papers
of Mr. Pennington, which were in a box or drawer which
the bank had for the use of its customers, and found the
Pennington deed of trust and note, and on inspection it
appeared on the original paper as originally written on the
typewriter that the deed of trust was due on January 1,
1926, and that the "6" had been partially erased and the
figure "1" written instead.   He thereupon sent for Mr.
Pennington and called his attention to this fact and asked
him if he had an attorney.   Mr. Pennington replied that
Mr. Cook represented him, and Mr. Cook was sent for, and
Mr. Buford turned over to Mr. Pennington the said pa-
pers.   Mr. Buford testified that Mr. Pennington made no
explanation of the matter, but said he would stand upon
the papers.   Mr. Buford consulted with the Jenkinses
about the matter, and they represented that Mr. Penning-
ton's note and deed of trust did not mature on January 1,
1921, and also that Mr. Pennington was to be second or
subordinate to the deed of trust and notes of the bank and
also to that of J. W. Jenkins and G. C. Jenkins.   Mr. Pen-
nington asked Mr. Buford about paying the interest on
the H. R. Jenkins note to him, it being then due and un-
paid.   Mr. Buford refused for two reasons: First, he did
not think Mr. Jenkins would be willing to pay the interest
when the note and deed of trust showed maturity on Janu-
ary 1, 1921, when they would be subject to foreclosure of
such deed of trust at any time; and, second, that he had
no authority to pay such interest, but proposed to lend
Mr. Pennington one thousand dollars on a demand note,
which arrangement was carried out.

Whereupon the People's Bank of Sumner and J. W.
Jenkins and G. C. Jenkins filed a bill setting forth that
the bank's deed of trust was a prior deed of trust to the
other two deeds of trust, and that the deed of trust of J.
W. Jenkins and G. C. Jenkins was a second deed of trust,
and that Pennington's deed of trust was a third deed of
trust; and also setting up that the date of the maturity
of the note and deed of trust to Pennington had been ma-

terially and fraudulently altered and that it was void, and charging that Pennington was claiming and asserting a prior right to enforce his deed of trust against the property involved, and alleging that they were entitled to have said deed of trust to. Pennington canceled aand removed as a cloud upon their respective rights.

Pennington proceeded to advertise the property for sale under the terms of the deed of trust, and at such sale bought the property in, and the trustee made a deed to him therefor. He then filed an answer to the bill denying that his deed of trust was subordinate to that of the bank, or to that of J. W. Jenkins and G. C. Jenkins, and asserted that his deed of trust was the prior deed of trust constituting the first lien upon the property in controversy, and denied that the agreement was that his deed of trust was to mature on January 1, 1926, but asserted that it was to mature on January 1, 1921. He denied that there was any alteration of the said note and deed of trust or that he had knowledge of any change therein, but asserted that the deed of trust as recorded was in accordance with the understanding and agreement between himself and the said H. R. Jenkins and wife, Elizabeth Jenkins. He admitted that he was asserting a prior right to enforce his deed of trust against the property in controversy, and charged that same has priority over the deed of trust of the complainants, the People's Bank of Sumner and J. W. Jenkins and G. C. Jenkins. He charged that the note for forty-five thousand dollars, payable to Pennington and the deed of trust securing the payment of the same were executed for a valuable consideration moving to the said H. R. Jenkins and Elizabeth Jenkins, and that said note and deed of trust were in full force and effect and had not been altered in any way whatsoever; that said Pennington had no knowledge of the existence of a deed of trust in favor of the complainants or any of them, and no knowledge or information relative to the indebtedness secured thereby, and no knowledge of the execution or recording thereof, and had no agreement or understanding with any

of the parties relative to said deeds of trust or indebtedness secured thereby; and alleged that the note and deed of trust in his favor securing his debt against H. R. Jenkins and Elizabeth Jenkins were on deposit in the complainant bank; that the debt is for a loan of the funds of the respondent on deposit in the complainant bank which were loaned by the bank for this respondent to the said H. R. Jenkins, and that the respondent, Pennington, agreed with the bank that the bank should make such loan from his funds and should take the note of Jenkins therefor payable to the respondent on January 1, 1921, and secured by deed of trust which should be a first lien on the lands of said H. R. Jenkins, that the bank made such loan and took the deed of trust in his favor and caused the deed of trust to be recorded and the record fees paid out of the funds of Pennington, and the said note and deed of trust retained in the custody of the bank until shortly before the filing of this suit; that Pennington had never seen the deed of trust and note until shortly before the filing of the suit, and not until after the bank claimed that said note and deed of trust had been changed and that the note and deed of trust had remained with the bank from the date of execution thereof until the day he was shown the same, and if any change had been made in the note or deed of trust it was made while in the care and custody of the bank, and it was the duty of the bank to safely keep the same and prevent any change thereof.

It was further alleged in the answer and cross-bill that said deed of trust of Jenkins to Pennington becoming in default, Pennington had caused the same to be advertised for sale and sold in accordance with the terms thereof, and that the property was purchased by him, and that he was the owner thereof, and that the claim of the complainants casts a cloud upon his title which he is entitled to have canceled and to have his title confirmed and to be decreed the possession of the land.

The cross-bill was answered and the allegations thereof denied.

On the 19th day of November, 1919, Ben T. Rowland, Jr., cashier of the People's Bank of Sumner, and the person who was to have the papers prepared in conformity to the agreement, wrote to Pennington the following letter:

"The People's Bank.  Capital Stock $50,000.00.

"Sumner, Miss., Nov. 19, 1919.

"Dear Ben: I had the Joe Jenkins papers drawn up and I carried same up thère and the Chancery Clerk and had both to sign, Joe and his wife.  You now hold a first mortgage.  I am having recorded and will give to you the first time you are down here.

"With best wishes, I am,

"Your friend truly, BEN T. ROWLAND, JR.

"I made the note due January 1, 1921, and it bears interest from date at six per cent."

The chancellor after hearing the evidence decreed that the Pennington note and deed of trust were altered in a material particular by Pennington and that such alteration was fraudulently made, and also decreed that the deed of trust of the People's Bank was the first deed of trust superior to the others, and that the deed of trust in favor of J. W. Jenkins and G. C. Jenkins was prior to the Pennington deed of trust, and subordinated the Pennington deed of trust to the two deeds of trust mentioned.  He also dismissed the crossbill of Pennington filed against the People's Bank and J. W. Jenkins and G. C. Jenkins, the complainants in the original bill, and also filed against H. R. Jenkins and his wife, Elizabeth Jenkins, who were made defendants to the cross-bill, and from this decree this appeal is prosecuted.

On the hearing H. R. Jenkins and his wife, Elizabeth Jenkins, testified that Ben T. Rowland, Jr., and Mr. Henderson, the deputy chancery clerk, came to their place and took their acknowledgments to the said deeds of trust; that the first deed of trust signed by them was a deed of trust to the People's Bank, that the second deed of trust was one to J. W. Jenkins and G. C. Jenkins, and that the third

deed of trust was to Pennington; that Mr. Rowland rep-
resented that the deeds of trust would not be due within
five years, and that they would not have signed the deed
of trust had they known that it matured January 1, 1921.
H. R. Jenkins also testified that on the night of the 15th of
November, 1919, it was understood by Mr. Pennington
that the deed of trust to Pennington would not
be made payable for five or six years, and that he (H.
R. Jenkins) and Pennington understood that the
deed of trust of the People's Bank would be prior to the
others, and that Pennington would have the third deed of
trust. Neither H. R. Jenkins nor his wife, Elizabeth Jen-
kins, read the deeds of trust and notes, but relied upon the
statements of Mr. Rowland as to when they would be due.
Elizabeth Jenkins seems to be unable to read, as shown
by her signing her name by a mark. She said that H. R.
Jenkins told her before Mr. Rowland came that the deed
of trust to the People's Bank was to be first, that Penning-
ton's deed of trust was to be last, and also that Penning-
ton's deed of trust and note would not mature under five
or six years. She also testified that Mr. Pennington told
her the summer after the papers were executed that he
never expected to bother them about it, that he did not care
whether H. R. Jenkins paid him or not so long as he paid
the interest, and that he would not bother him during his
lifetime. J W. Jenkins and G. C. Jenkins testified that
they were in Mr. Stephens' office and at the People's Bank
on the 15th day of November, 1919, and that it was under-
stood between all the parties that the Jenkins' deed of trust
to Pennington would not be due under five or six
years, and it was understood that the deed of trust
of the People's Bank would be the first deed of trust, the
deed of trust to them (J. W. Jenkins and G. C. Jenkins)
would be second, and the deed of trust to Pennington would
be third. They said that fifteen or twenty persons were
present that night, including Pennington, Stephens, Cutrer,
Ben T. Rowland, Jr., H. R. Jenkins, and themselves. The
witnesses do not state the specific words that passed from
one party to the other, but testified as to their understand-

ing, and as to Pennington's understanding, and as to the agreement in general terms. Pennington testified that he had no knowledge of the transaction between the People's Bank and the Jenkinses, except that Mr. Rowland told him that the Jenkinses could raise a considerable sum of money, that he had a first lien upon the land already with a cash payment of seventeen thousand five hundred dollars, and that he agreed to give up the money paid by Cutrer and Stephens to him and the note given to him by them for the balance of the purchase money, and to take a deed of trust from H. R. Jenkins and Elizabeth Jenkins on the land for forty-five thousand dollars, on the express understanding that he was to have the first lien; that he did not hear the conversations between Rowland and the Jenkinses with reference to the loan by the People's Bank to the said Jenkinses to pay the fee of Cutrer and Stephens; that he left the preparation of the papers to Mr. Rowland and authorized Mr. Rowland to pay out the money and to deliver the note of Stephens and Cutrer when the deed of trust to him (Pennington) was executed by H. R. Jenkins and his wife, Elizabeth Jenkins, and that he had received Mr. Rowland's letter above set out informing him that he had the first lien and that it was made payable January 1, 1921; that he instructed Mr. Rowland to make the papers due about one year after date. The deputy chancery clerk testified that he went with Mr. Rowland to the home of H. R. Jenkins and his wife, Elizabeth Jenkins, and took the acknowledgments to the several deeds of trust; that he did not recall any conversation between Rowland and them as to the maturities of the papers; that they had some conversation, but he did not recollect what it was; that he took the papers back to the People's Bank and on the following day took the acknowledgments of J. W. Jenkins and G. C. Jenkins to the bank's deed of trust, and that he received the papers for record on November 20, 1919, from Mr. Rowland, and that he recorded them in accordance with the instructions given; that the papers as recorded on the record were the same as to maturities as the papers given in by Mr. Rowland. He also testified that he

drew a draft on Pennington's account on the bank, and
that Rowland paid the draft, and that the record fee was
paid out of the funds of Pennington in this way, which was
the customary way in which he handled such matters.

A majority of the members of the court are of the opin-
ion that the chancellor was not warranted by the evidence
in finding that the People's Bank's deed of trust was a
prior one and that of Pennington was a secondary one or
a subordinate one.   All of the documents in evidence, in-
cluding the recordation of the instruments show that Pen-
nington's deed of trust was to have priority.   Pennington
already at the time of the transaction had a first lien on
the land and absolute title to the land confirmed by the
chancery court in a suit between the parties, and that he
had conveyed to Cutrer and Stephens, reserving in his
deed a vendor's lien, and having received seventeen thou-
sand five hundred dollars in cash from Cutrer and Ste-
phens, and also their note with a vendor's lien for twenty-
seven thousand five hundred dollars.   This transaction
was completed and closed on November 10, 1919.   It fur-
ther appears in evidence beyond dispute that Cutrer and
Stephens took title as attorneys or trustees for Jenkins
and became personally and absolutely bound for the pay-
ment of the forty-five thousand dollars purchase money.
It further appears without dispute that the fees of the said
attorneys and the costs of the suit referred to amounted to
twenty thousand dollars, and that Cutrer and Stephens
had an interest or fee to be cared for by the land which
caused the loan to be made by the bank.   In other words,
the loan from the bank to H. R. Jenkins and Elizabeth Jen-
kins was for the purpose of paying Stephens and Cutrer
and the costs of the suit in which the consent decree had
been entered.   The testimony shows that the land of H.
R. Jenkins consisted of five hundred sixty acres and at the
time of the transaction was worth from two hundred dol-
lars per acre up.   To secure this twenty thousand dollar
loan the bank secured a lien on other lands, being two
hundred fifty-five acres owned by J. W. Jenkins and G. C.
Jenkins, together with their indorsement.

All of these facts are perfectly consistent with the claim of Pennington and with what the papers show upon their face, but are inconsistent with a reasonable course of conduct, viewing the parties as normal people.

Just why Pennington would surrender his place as prior lienholder of the land to secure the payment of the twenty-seven thousand five hundred dollars, and give up the seventeen thousand five hundred dollars cash already in his hands to take a third place in this transaction, would be hard to understand. It would be unnatural for persons to give an enormous amount of security which the Jenkinses gave the bank, including the homes of J. W. Jenkins and G. C. Jenkins, when beyond all doubt the land as then valued of H. R. Jenkins alone was worth fourfold the amount of the money being borrowed from the bank. Mr. Rowland's letter to Pennington could only be accounted for on the theory that he was aiding Pennington in a fraud and defrauding his own bank of which he was cashier if the bank was in fact to be the preferred lienholder. It is certainly contrary to reason and all presumptions to presume that Mr. Rowland would write this letter unless he stated the true facts. Nothing is shown in the record to suggest that he would in any manner profit by such a transaction. It certainly would brand him as false to his trust and unworthy of the confidence of men if the agreement as understood by a large number of persons was contrary to what the letter indicated. The law does not presume fraud. It must be shown with reasonable certainty. Mr. Rowland was the cashier of the People's Bank, in sole charge of its affairs at the time, and we think that this letter is in legal effect the letter of the People's Bank. The bank was vitally interested in the matter. It had a deed of trust involved and had, through Mr. Rowland, agreed to prepare all the papers in the whole transaction and had done so. There is nothing to show any reason why Mr. Rowland would perpetrate a fraud against the Jenkinses and against the bank in favor of Pennington. His duty was to represent the bank, and there is nothing out-

side of the testimony of interested parties to show anything to the contrary. Mr. Rowland and Mr. Stephens are both dead. The seal of silence has hushed their lips. It must be assumed, we think, in favor of the validity of the papers placed upon record by the cashier of the People's Bank, and for the other parties, that the record speaks the truth. The whole matter was in the hands of Mr. Rowland. His letter to Mr. Pennington speaks not only his understanding of the transaction, but the bank's understanding of it. The testimony of the complainants as to the agreement is vague and indefinite. We think it is insufficient to outweigh the facts above mentioned.

Upon the proposition as to when the papers were to become due the testimony for the appellant and the appellees is more evenly balanced.

As to whether or not the papers were to be due under the agreement in 1921 or 1926, and whether the testimony was sufficient for the chancellor to find that they were due in 1926, the court is evenly divided. Inasmuch as the chancellor found as a fact that the deed of trust was fraudulently altered by Pennington, and we hold that the evidence was wholly insufficient to so show, we do not know whether the chancellor would have found upon this question of fact whether the deed of trust matured in 1926 or in 1921. Possibly his judgment in finding the facts was influenced by his finding as to the priority and as to the agreement, because if as a fact the papers had been fraudulently altered by Pennington after their execution, the cross-bill would have to be dismissed. The majority of the court thinks that there is no evidence to show that Pennington had anything to do with any change of the papers, if there was a change in fact, and that being true, if the change was made by Mr. Rowland after the execution of the papers by the Jenkinses, it would be a spoliation, and Pennington would retain his rights under the original instruments.

In view of what we have said, we think the cause should be reversed and remanded.

*Reversed and remanded.*

SYKES, J. (dissenting).

In my opinion the decree of the lower court should be affirmed. As I view the testimony the question really presented was a controverted question of fact decided by the chancellor in favor of the appellee.

The appellant, Pennington, is a son-in-law of appellees, H. R. and Elizabeth Jenkins. The land in controversy originally belonged to the Jenkinses. For some reason they conveyed it to Pennington. Subsequently a controversy terminating in a lawsuit arose between these parties as to the ownership of the land. This was settled by an agreed decree vesting title in Pennington. It seems that as a part of the settlement it was agreed among the parties that Pennington should convey the lands to the Jenkinses for a consideration of forty-five thousand dollars. Because of the lawsuit the Jenkinses had become indebted to their attorneys and for expenses incident to the suit for about twenty thousand dollars. In carrying out this settlement the land was conveyed to the attorneys temporarily. All parties to this controversy held a conference the night before the deeds of trust here in question were prepared. At these conferences which took place in the office of one of these attorneys and also in the bank, all parties now before the court were present. The bank was present through its cashier, Mr. Rowland, the senior Jenkins, and his two sons were present, Pennington was present, and the attorneys. In these conferences the question of this settlement and the execution of the three deeds of trust and notes were all discussed and agreed upon. The testimony of the Jenkinses is to the effect that it was then agreed and understood that the bank was to have a first deed of trust to secure its loan of twenty thousand dollars to Jenkins, that the Jenkins boys were to have the second deed of trust on this property to protect them in case they were called upon to pay the bank, and that Pennington was to have the third deed of trust for the forty-five thousand dollars due him. A majority of my brethren think the testimony is

not sufficient to sustain this finding of the chancellor. This agreement, however, as above stated, was testified to by the three Jenkinses and was only controverted by the testimony of Pennington. As I view it, this was certainly a controverted question of fact to be decided by the chancellor and that the testimony of the three Jenkinses amply sustains this finding.

As to why Pennington was willing to agree to his deed of trust coming third instead of first, we are not concerned. It may be that he was anxious to get a family quarrel adjusted. It may be, and perhaps is true, that at the time this agreement was made all parties thought the land of the two old Jenkins people worth much more than the combined amounts of the deeds of trust being given thereon. However, there is no question but that Pennington had the right to make this agreement and accept a third deed of trust. And the testimony, in my judgment, sustains the finding of fact of the chancellor that he in fact did so agree. In this conference Mr. Rowland, the cashier of the bank, stated that he would have the three deeds of trust drawn and properly executed in accordance with the above agreement. The next day these papers were so drawn by an attorney. The Pennington note and deed of trust were drawn to mature in 1926, as the testimony for the appellee states the agreement was. Rowland then took the papers to the two elder Jenkinses and told them in substance they were drawn in accordance with this agreement; that the bank held a first mortgage, and Pennington a third; that Pennington's debt did not mature for five or six years. Relying upon this statement of Rowland, the two elder Jenkinses executed the papers. They were also at a later period in the bank executed by the Jenkins boys, who at that time also believed they carried out the agreement made by all parties.

The fact that Pennington's deed of trust was first recorded is in no way binding upon any of the parties to this controversy. The statutes relating to priority of recordation protect innocent purchasers or incumbrancers for

value without notice and in no way affect or change any agreement between or among the original parties to these contracts. Consequently no rights were either lost or acquired because of the filing of these deeds of trust for record.

Mr. Rowland, the cashier of the bank, was the agent of the bank when he had drawn the note and deed of trust due the bank by the Jenkinses. He was not the agent of the bank, and the bank is in no wise bound by his action, in having prepared and executed the note and deed of trust of the Jenkinses to Pennington. It was no part of his duties, nor within the real or apparent scope of his employment, to have executed deeds of trust wholly between third parties. His act, therefore, in having drawn the Jenkins-Pennington deed of trust, could in no wise bind the bank. If he acted for any one in this matter, under this testimony, it was for Pennington and not the bank. I think there was ample testimony from which the chancellor was justified in finding that the maturity of the Pennington note and deed of trust was altered after execution, the due date in both instruments being changed from 1926 to 1921. The burden of proof rested upon Pennington to show that the change was made before execution, and this he failed to do. The papers were in the possession of Rowland. If the change was made by Rowland it would not be binding upon the bank, nor upon any party to this controversy if made without his knowledge or consent, but would be really a spoliation. The letter written by Rowland to Pennington in my opinion is in no wise an admission by the agent of the bank, but is merely written in his personal capacity about a matter that the bank was really not interested in; that is to say, the deed of trust of the Jenkinses to Pennington. The bank, however, of course was interested in the priority of this deed of trust. This priority, however, could not have been changed by Rowland in violation of the agreement of all these parties. Even, however, if this admission as to priority be considered an admission of interest against the bank, the four

Jenkinses could not be bound by any such admission. The record shows that they are vitally interested in the priority of these deeds of trust, and the time of the maturity of the Pennington note. The two Jenkins boys who are liable for the indebtedness due the bank are certainly most vitally interested in knowing that the bank holds the first mortgage. None of these Jenkinses could be bound by such an admission of the cashier of the bank. They have a right to insist that the priorities remain in accordance with the agreement and in accordance with the manner in which the papers were executed. Consequently any admission on the part of the cashier of the bank could in no wise affect the priority of these deeds of trusts.

As I understand the opinion of the majority, however, it is merely to the effect that the testimony is insufficient to sustain the decree and the cause is reversed and remanded generally. This being true, I refrain from going in detail into all the testimony.

From these views it follows that I think the testimony sufficient to sustain the finding of the chancellor that the bank's deed of trust was first, that of the Jenkins boys second, and further that Pennington holds a valid third deed of trust on this property, the debt maturing in 1926, as evidenced by the papers before the spoliation.

SMITH, C. J., concurs in this dissent.